COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





PASCUAL OLIBAS,


 Appellant,


v.


THE HONORABLE SHERIFF
ARNULFO "ANDY" GOMEZ,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS THE SHERIFF OF
REEVES COUNTY, TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§


 §


 §

No. 08-06-00010-CV



Appeal from


 143rd District Court


of Reeves County, Texas


(TC # 05-02-18179-CVR)




O P I N I O N



 This case involves a lawsuit arising out of a Texas Open Records request. Pascual Olibas
appeals sanctions awarded against him in the amount of $4,800. We affirm the judgment of the trial
court.

FACTUAL SUMMARY


 Olibas is the owner of Freedom Bail Bonds. On January 19, 2005, he sent Sheriff Arnulfo
Gomez of Reeves County a letter requesting the names of all reserve deputies employed since
January 2000. He also sought a list detailing how many hours each reserve deputy had worked since
January 2002 and a list detailing any type of expense the county paid for and the cost for each reserve
deputy, including but not limited to, uniforms and insurance. Olibas sent his requests pursuant to
the Texas Open Records Act and the Freedom of Information Act. Sheriff Gomez office received
Olibas's letter on January 21, 2005. 

 Sheriff Gomez replied by letter dated February 3, 2005:

 Under the Freedom of Information Act I am only required to produce documents that
I have in my possession or that are under my control. You have requested that I make
lists for you to your specifications. I will not be creating lists for you that are not
already in existence or answering any questions that I am not required to answer. 
You make requests on a daily or weekly basis and we do not have sufficient staff to
compile the information you are requesting to your specifications or answer your
random questions. We will continue to comply with the Freedom of Information Act
in every way by producing all public documents that you request. I am attaching a
list of Reserve Deputies.

Sheriff Gomez sent Olibas a second letter dated February 4 stating he did not have a list detailing
how many hours each reserve deputy worked or the type of expense the county paid for the cost of
each reserve deputy, including but not limited to, uniforms and insurance. Olibas received both
letters on February 7, 2005. 

 Olibas filed suit on February 3, 2005 alleging Sheriff Gomez failed to timely respond to his
open records request under Section 552.221(d) of the Texas Government Code. Sheriff Gomez,
individually and in his official capacity, filed an original answer, counterclaim, and motion for
sanctions. The counterclaim sought a declaratory judgment that he complied with Section
552.221(d). Sheriff Gomez sought sanctions (1) under Section 10.004 of the Texas Civil Practice
and Remedies Code, alleging Olibas's pleadings were brought for improper purposes; (2) under
Rule 13 of the Texas Rules of Civil Procedure, for signing a pleading that on its face was groundless;
and (3) under Chapter 11 of the Texas Civil Practice and Remedies Code, asserting that Olibas is a
vexatious litigant. 

 Eventually, Olibas non-suited all claims against Sheriff Gomez for the violation of the Open
Records Act. He filed a counterclaim alleging Sheriff Gomez did not have an independent cause of
action for his declaratory judgment claim. Olibas also sought Rule 13 sanctions against Sheriff
Gomez and his attorney, Bill Weinacht, on the grounds that the declaratory judgment suit was
groundless, filed in bad faith, and brought for the purpose of harassment. He also sought sanctions
under Section 10.004 of the Texas Civil Practice and Remedies Code. 

 The trial court entered judgment denying Olibas all relief requested. The court denied Sheriff
Gomez's counterclaim under the Declaratory Judgment Act but awarded him $4,800 in attorney's
fees as sanctions under Rule 13. Olibas appeals the sanction order in nine issues for review. The
first eight issues complain that the trial court abused its discretion in awarding Rule 13 sanctions. 
In his ninth issue, he challenges the trial court's refusal to sanction Sheriff Gomez for his pursuit of
a declaratory judgment when such action was not authorized by law. 

STANDARD OF REVIEW


 We review the imposition of Rule 13 sanctions for an abuse of discretion. See Low v. Henry,
221 S.W.3d 609, 614 (Tex. 2007). A trial court abuses its discretion if it acts without reference to
any guiding principles such that its ruling was arbitrary or unreasonable. See id. The mere fact that
a trial court may decide a matter within its discretion in a different manner than an appellate court
does not demonstrate an abuse of discretion. See Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 242 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

AWARD OF SANCTIONS


 Olibas raises several points arguing the trial court abused its discretion in assessing Rule 13
sanctions against him. He complains (1) the trial court ruled on the basis that the Texas Public
Information Act imposed a "good faith" requirement; (2) the trial court erred in concluding Olibas
had miscalculated the date a response to his request was due; (3) the trial court failed to specify on
what acts or omissions he based the sanctions order; (4) the award of $4,800 was excessive because
it was not "just" and bore no relationship to the sanctionable conduct; (5) the trial court erred in
finding Olibas and his attorney acted in "bad faith"; (6) the trial court erred in concluding Olibas's
suit was "groundless;" (7) the trial court abused its discretion in finding Olibas's suit was frivolous
and that Sheriff Gomez fully complied with the act; and (8) the sanctions award included fees for
work expended by Sheriff Gomez' attorney in preparing, filing, and litigating a cause of action they
were not authorized to file or prosecute. 

Rule 13

 Under Rule 13, "[t]he signatures of attorneys or parties constitute a certificate by them that
they have read the pleading, motion, or other paper; that to the best of their knowledge, information,
and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith
or groundless and brought for the purpose of harassment. . . . If a pleading, motion or other paper
is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and
hearing, shall impose an appropriate sanction available under Rule 215-2b, upon the person who
signed it, a represented party, or both." Tex.R.Civ.P. 13. Courts presume that pleadings, motions,
and other papers are filed in good faith. Id. Thus, the party moving for sanctions has the burden of
overcoming this presumption. GTE Communications Systems Corp. v. Tanner, 856 S.W.2d 725,
731 (Tex. 1993). 

 In his suit, Olibas alleged Sheriff Gomez failed to respond to his request or certify that the
information requested could not be made available within ten days as required by Section 552.221(d)
of the Texas Government Code. (1) Section 552.221 requires a governmental body to promptly
produce public information for inspection, duplication, or both on application by any person to the
officer. Tex.Gov't Code Ann. § 552.221(a)(Vernon 2004). "[P]romptly" means as soon as
possible under the circumstances, that is, within a reasonable time, without delay. Id. If an officer
cannot produce the public information for inspection or duplication within ten business days after
the date the information is requested under Subsection (a), the officer shall certify that fact in writing
to the requestor and set a date and hour within a reasonable time when the information will be
available for inspection or duplication. Id. § 552.221(d). 

Rule 13 Particularity Requirement


 In his third issue, Olibas contends the trial court failed to state with particularity what acts
or omission justified the sanctions order. Rule 13 requires that sanctions may not be imposed except
for good cause, the particulars of which must be stated in the sanctions order. Tex.R.Civ.P. 13. 
However, a complaint regarding a trial court's compliance with Rule 13 may be waived if the error
is not preserved by objection or a request that the particular grounds for awarding sanctions be set
out by the court. See Campos v. Ysleta General Hosp., Inc., 879 S.W.2d 67, 70 (Tex.App.--El Paso
1994, writ denied)(complaining party may waive particularity requirement of Rule 13 if they fail to
timely make a complaint). The trial court made the following relevant findings in its judgment:

 The Court finds that Sheriff Arnulfo 'Andy' Gomez, in his official capacity as Sheriff
of Reeves County, Texas complied with Chapter 522 of the Texas Government Code
with respect to the request for records referenced in Plaintiff's Petition for Writ of
Mandamum [sic], Injunction and Declaratory Judgment filed February 3, 2005. The
Court further finds that Arnulfo 'Andy' Gomez in his individual capacity had no duty
to Pascual Olibas under Chapter 522 of the Texas Government Code to provide any
records. The Court further finds that the Plaintiff's Petition was groundless and filed
in bad faith at the time it was filed. The Court further finds that Plaintiff's Petition
for Writ of Mandamus, Injunction and Declaratory Judgment and sanctions should
be denied. 

 Olibas has not preserved this issue for our review. He did not object to the form of the trial
court's judgment, he untimely filed a request for traditional findings of fact and conclusions of law,
and he failed to draw the court's attention to the need for particularized findings under Rule 13. Cf.
Campos, 879 S.W.2d at 70 (plaintiffs made some attempt to draw the trial court's attention to the
need for particularized findings). See Tex.R.App.P. 33.1(a)(1)(A)(party presenting complaint for
appellate review must have made complaint to the trial court by a timely request, objection, or
motion that stated the grounds for the ruling that the complaining party sought from the trial court
with sufficient specificity to make the trial court aware of the complaint). Issue Three is overruled. 

Groundless 

 The trial court found Olibas's petition was groundless and filed in bad faith. Olibas argues
in his second issue that the trial court miscalculated the due date for Sheriff Gomez to respond under
the Act. In his sixth issue, he complains that the trial court erred in determining his suit was
groundless because on the date he filed his petition, he had not yet received any response from
Sheriff Gomez. Olibas maintains that both he and his attorney believed there was a factual basis for
filing suit since they calculated the response date as having already expired at the time the suit was
filed. Although Olibas claims the trial court used Section 552.301(b) to calculate the deadline, the
record does not support the allegation. We cannot determine from the judgment which deadline the
trial court relied upon.

 The term "groundless" means having no basis in law or fact and not warranted by good faith
argument for the extension, modification, or reversal of existing law. Tex.R.Civ.P. 13. Section
552.221 requires an officer of a governmental body to promptly produce public information. 
Tex.Gov't Code Ann. § 552.221(a). When that information cannot be produced the officer must
certify in writing that the information cannot be produced within ten business days after the date the
information is requested. See id. at § 552.221(d). Olibas contends that since his request was dated
January 19, Sheriff Gomez' response would have been due no later than February 2. However, when
a governmental body cannot produce requested information within ten business days of receipt of
the request for the information, the public information officer must certify that fact in writing to the
requester and set a date and hour within a reasonable time when the information will be available. 
See Tex.Atty.Gen.Op. ORD 664, 2000 WL 33409063 (Feb. 8, 2000). (2) 

 Sheriff Gomez' office received Olibas's request on January 21, 2005. (3) Ten business days
from the date the request was received was February 4, 2005. Sheriff Gomez sent Olibas a letter on
February 3 and another on February 4 informing Olibas he could only provide him with information
in his possession and attached a list of reserve deputies. 

At the time Olibas filed suit, the responses were not past due. There was no basis in fact for Olibas
to contend that Sheriff Gomez had failed to comply with the Open Records Act. Olibas's suit was
filed prematurely and prior to the period in time in which he could have known that Sheriff Gomez
had not timely responded to his request. The trial court did not abuse its discretion in determining
Olibas's suit was groundless. We overrule Issues Two and Six.

Bad Faith 

 Secondly, Olibas's suit must have been filed in bad faith. Bad faith does not simply mean
bad judgment or negligence, but rather means the conscious doing of a wrong for dishonest,
discriminatory, or malicious purpose. Campos, 879 S.W.2d at 71. In making this determination, the
trial court must examine the credibility of the party or attorney against whom sanctions are requested,
taking into consideration all facts and circumstances available at the time of the filing. Id. 

 In his first issue, Olibas contends the trial court abused its discretion in determining his
request was frivolous and sanctionable since the information he requested was not sought in "good
faith." Olibas argues the trial court erred since the Texas Public Information Act does not require
a "good faith" requirement. While the Act does not require that an open records request be filed in
good faith, an award of sanctions under Rule 13 requires a showing of "bad faith." See
Tex.R.Civ.P. 13. Thus, the trial court did not err in applying the Rule 13 standards to the award of
sanctions. We overrule Issue One.

 In his fifth issue, Olibas contends that the trial court abused its discretion in determining that
he acted in bad faith because any miscalculation of the due date was not intentional, but at most,
resulted from bad judgment and/or negligence. Olibas also contends the trial court erred in finding
his suit was filed in bad faith since the record demonstrated Sheriff Gomez failed to respond to some
of his public information requests. (4)
 

 Olibas's counsel testified that his calculation of the due date was erroneous. Even if Olibas
believed the tenth business day would have fallen on February 3, filing suit on the due date does not
support his petition that Sheriff Gomez failed to respond. Olibas could not have known on the date
he filed suit that Sheriff Gomez did not timely respond to his request for public information. The
determination of whether Olibas acted in bad faith lies within the discretion of the trial court. 
Although there is conflicting testimony as to why the suit was filed on February 3, the credibility of
the party at the time of filing the petition is left to the trial court. Because the evidence supports the
trial court's judgment that Olibas acted in bad faith at the time of filing of his petition, we overrule
Issue Five. 

Excessive Sanctions


 Olibas argues in his fourth issue that the sanctions were excessive. Sanctions imposed under
Rule 13 may not be excessive. GTE Communications Systems Corp., 856 S.W.2d at 731. Rule 13
requires that sanctions be "appropriate," which is the equivalent of "just" under Rule 215. Id. We
utilize a two part test to determine whether a sanction is just. First, there must be a direct nexus
between the offensive conduct, the offender, and the sanction imposed; and secondly, the award must
not be excessive. Transamerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991);
Aguilar v. Morales, 162 S.W.3d 825, 831-32 (Tex.App.--El Paso 2005, pet. denied).

 Olibas contends that Sheriff Gomez would not have incurred attorney's fees if he would have
inquired from his lawyer whether the responses he sent were adequate. In his view, all the litigation
could have been avoided if a little courtesy and professionalism had been displayed by Sheriff
Gomez and his attorneys. Olibas argues Sheriff Gomez hired attorneys for the purpose of
manufacturing his own lawsuit against Olibas so as to encourage litigation and a fight which would
have not occurred otherwise. Olibas also contends sanctions were excessive since counsel for
Sheriff Gomez could not account for his billable hours. 

 For the following reasons, the trial court's award of sanctions was "appropriate." First, the
trial court imposed Rule 13 sanctions on the basis that Olibas's lawsuit required Sheriff Gomez to
retain legal counsel. The court's award of $4,800 was intended to compensate Sheriff Gomez for
legal fees incurred. Although Olibas claims Sheriff Gomez incurred his fees as a result of his
manufactured lawsuit, counsel was hired not only to pursue the counterclaim but also to defend the
original lawsuit. The Sheriff employed Bill Weinacht, who spent some twenty to twenty-five hours
investigating Olibas's claim, researching the law, interviewing the Sheriff and various witnesses,
preparing a response, and researching a counterclaim. Because trial court determined that Olibas's
suit was filed in bad faith and was groundless, it did not err in assessing sanctions for attorney fees
incurred in defending that suit.

 Secondly, the amount of sanctions was not excessive. Although Weinacht testified he did
not keep time records of hours spent in preparing for litigation, he testified that a reasonable hourly
rate was $150 per hour and that he worked approximately twenty to twenty-five hours. (5) Weinacht
also stated he hired the firm of Rush, Kelly, Morgan, Dennis, Corzine & Hansen to assist him in
defending the lawsuit and in prosecuting the declaratory judgment because Olibas also sought
sanctions against him personally. According to Weinacht, the firm charged $135 per hour and billed
approximately twelve hours of work. (6) The evidence established total fees incurred between the
range of $4,620 and $5,370. The trial court awarded $4,800.

 Sanctions awarded as attorney's fees fall within the sound discretion of the trial court. JHC
Ventures, L.P. v. Fast Trucking, Inc., 94 S.W.3d 762, 778 (Tex.App.--San Antonio 2002, no pet.);
Gorman v. Gorman, 966 S.W.2d 858, 868-69 (Tex.App.--Houston [1st Dist.] 1998, pet. denied). 
Proof of the reasonableness and necessity of attorneys fees is not required when fees are assessed as
sanctions. Id. Because the award was within the range established at trial, it was not excessive. We
overrule Issue Four. 

Remaining Issues


 In Issue Seven, Olibas contends that the trial court erred in concluding Sheriff Gomez fully
complied with the Public Information Act. This issue is waived because Olibas failed to raise it in
the trial court. See Tex.R.App.P. 33.1(a). His only complaint below related to the timeliness of his
response. Indeed, his brief in this court states the "undisputed record reveals that Appellant, Pascual
Olibas, made no complaint as to the sufficiency of Sheriff Gomez' February 3rd and 4th responses
to his January 19th public information request." Issue Seven is overruled.

 In his eighth issue, Olibas argues the trial court erred in awarding sanctions because the court
based its decision on the Declaratory Judgment Act and Sheriff Gomez was not entitled to relief
under the Act. The judgment states the contrary. It specifically found Sheriff Gomez was not
entitled to relief under the Declaratory Judgment Act and expressly stated that sanctions were based
on Rule 13. Issue Eight is overruled.

 Finally, Olibas argues that the trial court abused its discretion by refusing to assess sanctions
against Sheriff Gomez and/or his attorneys for seeking a declaratory judgment. The trial court
agreed with Olibas and found that Sheriff Gomez was not entitled to relief. The burden still rested
with Olibas to show the suit was groundless and brought in bad faith in order to be entitled to
Rule 13 sanctions. The testimony did not establish the suit was brought in bad faith or was
groundless. Because Olibas did not present evidence overcoming the presumption that the suit was
filed in good faith, we overrule Issue Nine. Having overruled all issues for review, we affirm the
judgment of the trial court. 


August 23, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.
1. Olibas also asserted that Sheriff Gomez failed to request an attorney general's opinion as to whether any
document requested should be withheld under Section 552.301 et seq. of the Texas Government Code. Section 552.301
of the Texas Government Code states: 


 (a) A governmental body that receives a written request for information that it wishes to withhold from public
disclosure and that it considers to be within one of the exceptions under Subchapter C must ask for a decision from the
attorney general about whether the information is within that exception if there has not been a previous determination
about whether the information falls within one of the exceptions.


. . .



 (d) A governmental body that requests an attorney general decision under Subsection (a) must provide to the
requestor within a reasonable time but not later than the 10th business day after the date of receiving the requestor's
written request:


 (1) a written statement that the governmental body wishes to withhold the requested information and
has asked for a decision from the attorney general about whether the information is within an exception to public
disclosure; and

 (2) a copy of the governmental body's written communication to the attorney general asking for the
decision or, if the governmental body's written communication to the attorney general discloses the requested
information, a redacted copy of that written communication.


Tex.Gov't Code Ann. § 552.301 (a) & (d)(Vernon Supp. 2006).
2. In construing the Texas Open Records Act, Attorney General Opinions are to be considered by the courts. 
See Pack v. Crossroads, Inc., 53 S.W.3d 492, 504 (Tex.App.--Fort Worth 2001, pet. denied); Hancock v. State Bd. of
Ins., 797 S.W.2d 379, 381 (Tex.App.--Austin 1990, no writ). While not binding on courts, Attorney General Opinions
construing the Texas Open Records Act are given great weight because the legislature has required a written opinion
when a determination is requested from the Attorney General. Heard v. Houston Post Company, 684 S.W.2d 210, 212
(Tex.App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.).
3. Olibas knew Sheriff Gomez received his request on January 21, 2005 because his letter was sent by certified
mail return receipt. 
4. During the hearing, Exhibit 3 was admitted into evidence. It demonstrates that Olibas made several requests
to Sheriff Gomez between 2004 to 2005. The record also showed Olibas sent Sheriff Gomez second requests for some
of the information he sought in the past. The issue, however, is not whether Sheriff Gomez failed to respond to requests
made in the past, but whether he timely responded to the request at issue here. 

5. Weinacht established his attorneys fees ranged between $3,000 and $3,750. 
6. Based upon this testimony, the fees for the firm of Rush, Kelly, Morgan, Dennis, Corzine & Hansen were
$1,620.