In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00126-CR


______________________________




DONALD REED, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 102nd Judicial District Court


 Bowie County, Texas


Trial Court No. 05F0189-102




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 After police showed several witnesses one or more photographic arrays that "possibly"
contained two pictures of the same person--and thereby "possibly" left only five distinct persons
being pictured in those arrays--the witness identified Donald Reed as the person who stole more
than $20,000.00 worth of cash and property from Loyd "Bubba" Green and his towing business
January 4, 2005. Reed unsuccessfully sought to exclude these photographic arrays from evidence. 
Ultimately, the jury convicted Reed of the theft. See Tex. Penal Code Ann. § 31.03 (Vernon Supp.
2007). After Reed pled "true" to sentence-enhancement allegations of two prior felony offenses, the
jury assessed a fifty-year sentence, which was imposed by the trial court. See Tex. Penal Code
Ann. § 12.42(d) (Vernon Supp. 2007). 

 On appeal, Reed contends in two issues that the trial court erred by allowing witnesses to
identify him based on what he alleges are suggestive photographic arrays. In a third issue, Reed
contends the judgment contains a clerical error. We reform the judgment to correct a clerical error
and affirm the judgment as reformed. That result is dictated by our determinations that (1) Reed
failed to preserve the photographic-array issues for appellate review, and (2) Reed was properly
sentenced for an enhanced third-degree felony, not a first-degree felony.

(1) Reed Failed to Preserve the Photographic-Array Issues for Appellate Review

 In his first point of error, Reed contends the trial court erred by admitting testimony about
an out-of-court identification made of him by several witnesses. He contends these out-of-court
identifications were based on an unduly prejudicial photographic array that contained two pictures
of him as one of the six suspects. Reed's second point of error is based on his first, asserting the in-court identifications by these same witnesses should have been excluded because those later
identifications were tainted by the previous identifications based on the improper photographic
arrays. 

 To preserve error for appellate review, the complaining party must properly make to the trial
court "a timely request, objection, or motion" stating the grounds "with sufficient specificity to make
the trial court aware of the complaint, unless the specific grounds were apparent from the context." 
Tex. R. App. P. 33.1; see also Tovar v. State, 221 S.W.3d 185, 188-89 (Tex. App.--Houston [1st
Dist.] 2006, no pet.). Stated differently, the party complaining on appeal about the admission or
exclusion of evidence "must, at the earliest opportunity, have done everything necessary to bring to
the [trial] judge's attention the evidence rule or statute in question and its precise and proper
application to the evidence in question." Martinez v. State, 91 S.W.3d 331, 335-36 (Tex. Crim.
App. 2002); see also Tex. R. App. P. 33.1; Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App.
2005); Tovar, 221 S.W.3d at 188-89. We are not allowed to reverse a trial court's evidentiary
decision on the basis of any reason that was not first presented to the trial court. State v. Herndon,
215 S.W.3d 901, 909 (Tex. Crim. App. 2007).

 Reed did not file a pretrial motion to suppress the photographic arrays. Nor did Reed object
to the in-court identifications made by three witnesses that Reed was the person who stole over
$20,000.00 in cash and other property from Green. Nor did Reed object to any of the testimony from
Green or Jason Gaspard, an employee of Green's business, regarding their out-of-court identifications
of Reed made from the photographic arrays. Instead, Reed waited until the State sought to admit two
of those photo arrays to raise any kind of objection. At that time, Reed said, "Your Honor, I'm going
to object to the introduction of the lineups, and I would get to why when I get my chance to cross-examine officer White." The trial court responded, "Well, the objection will be overruled, if that just
be the basis, all that is stated to the Court. The objection will be overruled." Reed proffered no
further justification for exclusion of the photographic arrays. 

 Reed's objection to the State's photographic arrays constituted only a general objection to
these exhibits. Reed offered no specific explanation for his objection and provided the trial court
with no basis in law or fact for the exclusion of the photographic arrays. As such, Reed's first
objection to these exhibits was clearly insufficient to apprise the trial court of the basis for excluding
the arrays. Accordingly, Reed failed to preserve this issue for appellate review. Cf. Simmons v.
State, 100 S.W.3d 484, 492-93 (Tex. App.--Texarkana 2003, pet. ref'd) (trial counsel's failure "to
clearly notify" trial court of basis of objection at time evidence was to be admitted waived issue for
appellate review); Teixeira v. State, 89 S.W.3d 190, 192-93 (Tex. App.--Texarkana 2002, pet. ref'd)
(general objection to qualifications or reliability of expert held insufficient to preserve appellate
challenge); Moore v. State, 109 S.W.3d 537, 541-42 (Tex. App.--Tyler 2001, no pet.). (1) We
overrule Reed's first and second points of error.

(2) Reed Was Properly Sentenced for an Enhanced Third-Degree Felony, Not a First-Degree
Felony

 In his final appellate issue, Reed contends the trial court's judgment contains an error in
reciting that Reed was convicted for first-degree felony theft. The State fails to address this issue. 
Reed is correct.

 First-degree felony theft is the taking of property valued at more than $200,000.00. Tex.
Penal Code Ann. § 31.03(e)(7). The jury's verdict states it found Reed guilty of theft of property
valued at more than $20,000.00 but less than $100,000.00. Theft of property valued at this lesser
amount is a third-degree felony. See Tex. Penal Code Ann. § 31.03(e)(5).

 The punishment range for a third-degree felony is between two and ten years' imprisonment. 
Tex. Penal Code Ann. § 12.34 (Vernon 2003). The applicable punishment range in this case was,
however, increased from that provided for third-degree felonies to the same punishment ranges as
that provided for first-degree felonies because Reed pled "true" to having been previously, finally,
and sequentially convicted of two other felony offenses. Compare Tex. Penal Code Ann.
§ 12.42(d) (enhanced punishments for repeat and habitual felony offenders) with Tex. Penal Code
Ann. § 12.32 (Vernon 2003) (punishments for first-degree felony offenses). The jury's verdict form
on punishment took into account Reed's status as an habitual offender, authorizing punishment at
the higher level applicable in this case.

 While Reed was punished within the proper, applicable punishment range based on this crime
and his criminal history, he was, nonetheless, convicted of only a third-degree felony. The notation
on the trial court's judgment that Reed was convicted of a first-degree felony is a clerical error, not
the product of judicial reasoning. Thus, we are authorized to reform the trial court's judgment so that
it may speak the truth. See French v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); Smith v.
State, 223 S.W.3d 690, 696-97 (Tex. App.--Texarkana 2007, no pet.). We, therefore, reform the
trial court's judgment to reflect that Reed was convicted by a jury of theft of property valued at
greater than $20,000.00 but less than $100,000.00, a third-degree felony, and that he was punished
within the range prescribed by the statute, which provides enhanced punishments for habitual and
repeat felony offenders.

 We affirm the trial court's judgment as reformed.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: March 19, 2008

Date Decided: March 28, 2008


Do Not Publish
1. We additionally note that none of the trial witnesses affirmatively testified that Reed's
picture appears more than once in any of the arrays. At best, the testimony of one witness might
suggest that someone other than Reed might "possibly" appear twice in State's Exhibit 7 and State's
Exhibit 14. There is not even the barest suggestion anywhere in the record that any of the
photographs comprising State's Exhibit 8 are of the same person as another pictured in that array.



false"
 UnhideWhenUsed="false" Name="Dark List Accent 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00038-CV

                                                ______________________________

 

 

                                           ELAINE
NOLTE, Appellant

 

                                                                V.

 

                                     MORGAN FLOURNOY, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the County
Court at Law No. 1

                                                           Angelina County, Texas

                                                            Trial
Court No. 16,485

 

                                                          
                                        

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            Elaine
Nolte and Morgan Flournoy each owned an undivided interest in real property in
Angelina County, Texas, consisting of fifty acres of land and a dwelling house,
to which reference was made as the small porch home.[1]  Nolte travelled five hours to Angelina County
from her home for the purpose of spending the weekend in the porch house and
visiting with family and friends, only to discover that her key no longer
worked the locks on the doors.  Nolte
called Flournoy on the telephone in order to obtain entry, but Flournoy
declined to then come to allow her into the house, saying that he was attending
a ballgame and was unable to return to the property.  According to Nolte, Flournoy expressed his
belief that the deed to him from Noltes relatives conveying a fifty-two
percent interest in the real property also entitled him to all materials,
furnishings, and equipment located on and in the porch house.  Nolte returned to her place of residence
without gaining entry to the porch home. 
She then filed suit against Flournoy for conversion of the personal
property contained in the porch home and asked the trial court to declare
ownership of that personal property. 
Although Nolte later acknowledged that Flournoy had removed the locks
from the house after the incident in which she could not gain entry, she was
unable to reach an accord with him concerning claims made to personal
property.  

            The
porch home contained personal property of several members of the Nolte
family.  Flournoy had purchased his
interest in the real estate on which the porch home was situated from Noltes
relatives, who (by Flournoys account) had also given him their personal
possessions contained within the dwelling.  Flournoy answered the suit by filing a general
denial, adding that [t]he personal property has not been removed nor has it
been transferred, altered, destroyed or damaged.  The Defendant owns an undivided 52% interest
in the house and in some or all of the personal property situated in the home
and he can not [sic] convert his own assets. 
In that same pleading, Flournoy alleged that Noltes claim was
frivolous, without merit and filed for the sole purpose of intimidation and
threat.  Based on those pleadings,
Flournoy prayed that the court award him sanctions for attorneys fees and
costs.  

            The
matter was set for trial on February 4, 2011. 
On January 31, 2011, Nolte filed a notice of nonsuit without prejudice
in which she agreed to pay the costs incurred. 
At the time scheduled for trial, Nolte did not appear.  Flournoys attorney stated that [m]y
secretary called the counsel for the plaintiff who indicated he was not coming
to court because, as far as he was concerned, the case was nonsuited and there
was no need for him to appear.  The
trial court decided to proceed here today as to the affirmative relief that
Mr. Flournoy seeks.  After hearing
testimony by Flournoy that Nolte had only been denied access to the property
for some two and a half hours, that she had since been allowed to come and go
freely, and that no personal property had been removed, the trial court found
Noltes suit to be frivolous.  The court
granted Noltes nonsuit and (on the counterclaim by Flournoy) ordered Nolte to
pay Flournoys attorneys fees in the amount of $7,706.25 and court costs of $661.00
as sanctions.  

            On
appeal, Nolte complains that the trial court erred in the following respects:  (1) holding a trial after the voluntary
nonsuit by Nolte of all of her pending claims; (2) awarding sanctions as sought
in Flournoys answer (alleging that his pleadings seeking relief under a claim
of a frivolous lawsuit amounted to a counterclaim and could not be considered
as having been filed because Flournoy did not pay the filing fee for the filing
of a counterclaim); (3) awarding sanctions without sufficient evidence to
establish that Noltes suit was frivolous; (4) awarding costs not found in the
clerks bill of costs; and (5) allegedly entering judgment without due process
in compliance with Rule 21 of the Texas Rules of Civil Procedure.  We find that the trial court was authorized
to dispose of Flournoys pending motion for sanctions despite Noltes nonsuit,
that Flournoys failure to deposit a filing fee for his answer did not deprive
the trial court of authority to impose sanctions, that the evidence was
sufficient to support the trial courts judgment and award of costs, and that
Nolte failed to preserve due process complaints. 

I.          Nonsuit
Did Not Prevent the Trial Court From Holding a Hearing on Flournoys Motion for
Attorneys Fees and Costs 

 

            We
review awards of sanctions and non-mandatory attorneys fees under the abuse of
discretion standard.  Low v. Henry, 221 S.W.3d 609, 614 (Tex.
2007); Bocquet v. Herring, 972 S.W.2d
19, 20 (Tex. 1998).  A trial court abuses
its discretion if it acts arbitrarily or unreasonably. Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 24142 (Tex. 1985).

At any time before the plaintiff has introduced
all of his evidence other than rebuttal evidence, the plaintiff may dismiss a
case, or take a non-suit, which shall be entered in the minutes.  Notice of the dismissal or non-suit shall be
served in accordance with Rule 21a on any party who has answered or has been
served with process without necessity of court order.

 

Tex.
R. Civ. P. 162.  Citing to this
principle, Nolte argues that no case or controversy was before the court when
it held trial on February 4, 2011. 
However, Rule 162 provides:

Any dismissal pursuant to this rule shall not
prejudice the right of an adverse party to be heard on a pending claim for
affirmative relief or excuse the payment of all costs taxed by the clerk.  A dismissal under this rule shall have no
effect on any motion for sanctions, attorneys fees or other costs, pending at
the time of dismissal, as determined by the court.  Any dismissal pursuant to this rule which
terminates the case shall authorize the clerk to tax court costs against
dismissing party unless otherwise ordered by the court.

 

Tex.
R. Civ. P. 162.  If Flournoy
presented any pending claims for affirmative relief, he had a right to be heard.
 Le
v. Kilpatrick, 112 S.W.3d 631, 633 (Tex. App.Tyler 2003, no pet.) (if the
motion is timely filed, a plaintiff has an absolute right to a nonsuit as long
as the defendant has not made a claim for affirmative relief) (quoting BHP Petroleum Co. v. Millard, 800 S.W.2d
838, 841 (Tex. 1990)). 

            Despite
the fact that Flournoys pleadings are entitled Defendants Original Answer
and the title does not indicate that the pleadings contain a request for
affirmative relief, we are to treat the plea or pleading as if it had been
properly designated.  Tex. R. Civ. P. 71; see Hodge
v. Smith, 856 S.W.2d 212, 214 n.1 (Tex. App.Houston [1st Dist.] 1993, writ
denied) (The titles of the pleadings and other court documents are not
controlling.  We are to look at the
substance of the pleadings and proceedings to determine what actually
occurred.).  Nolte acknowledges that a
motion for sanctions or a claim for attorneys fees and costs is considered to
be a counterclaim seeking affirmative relief. 
Villafani v. Trejo, 251 S.W.3d
466, 469 (Tex. 2008); Dean Foods Co. v.
Anderson, 178 S.W.3d 449, 453 (Tex. App.Amarillo 2005, pet. denied)
(citing Falls County v. Perkins & Cullum,
798 S.W.2d 868, 87071 (Tex. App.Fort Worth 1990, no pet.)); J.C. Hadsell & Co. v. Allstate Ins. Co.,
516 S.W.2d 211, 214 (Tex. Civ. App.Texarkana 1974, writ dismd) (nonsuit did
not preclude defendants right to be heard on counterclaim for attorneys fees);
see Tex.
R. Civ. P. 162.  Under Rule 162,
the trial court had discretion to consider the attorneys fees and costs sought
within Flournoys answer.  See 1 Tex.
Jur.3d Actions § 266 (West
2004) (Rule 162 does appear to acknowledge a measure of discretion in the
trial court in deciding whether a nonsuit can be used to avoid sanctions); Addington v. Addington, No. 14-03-00340-CV,
2004 WL 1472127, at *2 (Tex. App.Houston [14th Dist.] July 1, 2004, no pet.)
(mem. op.).  Nevertheless, Nolte contends
that Flournoy was not entitled to a hearing. 
Specifically, the argument is that since Flournoy failed to pay the
filing fee required to be paid when filing a counterclaim, no request for
affirmative relief was pending before the court.  Accordingly, Nolte contends that the trial
court abused its discretion in conducting the hearing. 

            The
statute Nolte cites regarding mandatory fees is a provision in the Texas
Government Code directing the district clerk to collect $15.00 from a litigant
who files a counterclaim.  Tex. Govt Code Ann. § 51.317(b)(2)
(West Supp. 2011).  Contrary to Noltes
position, the payment of a filing fee is not generally a prerequisite to
jurisdiction, nor does the failure to pay such fees deprive the trial court of
jurisdiction over a case.  J. Allen Family Partners, Ltd. v. Swain, No. 04-09-00384-CV,
2010 WL 2103228, at *3 (Tex. App.San Antonio May 26, 2010, no pet.) (mem. op.)
(citing Kvanvig v. Garcia, 928 S.W.2d
777, 779 (Tex. App.Corpus Christi 1996, orig. proceeding); Tanner v. Axelrad, 680 S.W.2d 851, 853
(Tex. App.Houston [1st Dist.] 1984, writ dismd); Advance Imps., Inc. v. Gibson
Prods. Co., 533 S.W.2d 168, 16970 (Tex. Civ. App.Dallas 1976, no
writ)).  

            Nolte
cites to caselaw stating that a document is conditionally filed when tendered
to the clerk, but that filing is completed when the fee is paid.  Jamar
v. Patterson, 868 S.W.2d 318, 319 (Tex. 1993).  While Jamars
ruling as to conditionally filed documents applies to the circumstances in that
case, it does not apply here.  Jamar only held that the date a motion
for new trial is conditionally filed controls the appellate timetable;
therefore, we do not find it controlling. 
Id.  Although Jamar stated in a footnote that the court should not consider a
motion for new trial until the fee is paid, the case does not hold that the
trial court is prohibited from considering it, or that it would abuse its
discretion in doing so.  Id. at 319 n.3.  Referencing the language in Jamar, our sister court wrote:

we interpret the Texas Supreme Courts suggestion
that the trial court should not act on a motion for new trial before the
filing fee is paid more as instructive than as a curbing of the trial courts
jurisdiction or authority.  Upon a
sufficient showing of nonpayment, the trial court has discretion to refuse to
act upon a motion for new trial until the filing fee is paid.  Nevertheless, though it may have no
obligation until the fee is paid, we conclude that the trial court in its discretion
may consider and rule upon a motion for new trial from the time that it is
tendered to the clerk and conditionally filed.

 

Kvanvig, 928 S.W.2d at 779.  Therefore,
even though a defendant does not have an unconditional right to be heard on
counterclaims absent the payment of a filing fee, a trial court may, in its
discretion, consider such counterclaims without payment of the statutory filing
fee.  Swain,
2010 WL 2103228, at *3; Kvanvig, 928
S.W.2d 779.  Hence, we find the trial
court acted within its discretion in hearing the claims for attorneys fees and
costs despite the fact that the filing fee remained unpaid.  

II.        The Record Supported
the Trial Courts Award of Sanctions

            Nolte stated
Chapter 10, Texas Civil Practice & Remedies Code, entitled Sanctions for
Frivolous Pleadings and Motions may have been nearer [to] the Appellees and
the Courts thoughts. [2]
 We agree.  

            Although
Chapter 10 does not define the term frivolous, it requires that a pleading
not being presented for any improper purpose, including to harass, and that each
allegation or other factual contention in the pleading . . . ha[ve] evidentiary
support or, for a specifically identified allegation or factual contention, is
likely to have evidentiary support after a reasonable opportunity for further
investigation or discovery.  Tex. Civ. Prac. & Rem. Code Ann. §
10.001(1), (3) (West 2002).  A trial
court may impose sanctions against a party if the trial court finds that the
party has failed to comply with any one of the requirements of Section 10.001
of the Texas Civil Practice and Remedies Code. 
Tex. Civ. Prac. & Rem. Code
Ann. § 10.004(a) (West 2002).

            In
this case, the trial court heard testimony that the personal property contained
within the home had not ever been removed and that Nolte was only temporarily
denied access to the property (only for about two and a half hours until I could
get someone to come unlock it and let them in).  Flournoy testified that he believed the
lawsuit was totally frivolous from the start. 
There were no allegations that Nolte had suffered any damages from the
conversion which she claimed to have occurred. 

            The
elements of a conversion cause of action are:  (1) plaintiff owned, had legal possession of,
or was entitled to possession of the property; (2) defendant assumed and
exercised dominion and control over the property in an unlawful and unauthorized
manner, to the exclusion of and inconsistent with plaintiffs rights; (3)
plaintiff made a demand for the property; and (4) defendant refused to
return the property.  Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd., 287 S.W.3d 877, 888 (Tex. App.Dallas
2009, no pet.) (citing Ojeda v. WalMart
Stores, Inc., 956 S.W.2d 704, 707
(Tex. App.San Antonio 1997, pet. denied)). 
Additionally, a predicate to recovery for conversion is a showing that
damages were incurred by the plaintiff.  Id. at 889; United Mobile Networks, L.P.
v. Deaton, 939 S.W.2d 146, 147 (Tex. 1997) (per curiam).  

            In
this case, Noltes first amended petition demonstrated that she did not have
ownership of all of the personal property contained in the porch home.  Flournoy purchased the realty from Noltes
relatives, Jeanette Dorman, Charlie Mae Mahan, and John Jordan Mahan, who
indicated to him that they owned an interest in the contents and were
conveying it to him.  Nolte claimed that
Flournoy converted the property within the home by placing a lock on the door
to the porch home, even though exhibits established that Nolte also had such a
lock on the door.  Noltes petition
correctly explains that both parties had the same, common right to possess the
porch home, and Flournoys undivided interest in the home meant that the
placement of the lock was not unlawful since he was securing his own
interest.  There was no allegation that
any property was removed from the porch home, although Flournoy expressed his
interest in the personal property belonging to Noltes relatives, which he said
he believed had been given to him. 
Flournoy did not refuse to return any property belonging to Nolte, and
Noltes petition acknowledges that the Defendant later removed his lock from
the doors.  Although the petition
claimed that the parties were unable to reach an accord concerning claims
made to personal property, Nolte nonsuited the declaratory judgment and
conversion actions.  

            Flournoy
alleged that Nolte filed suit to use the court system and the cost of legal
services to coerce [Flournoy] into paying her purchase number for her
undivided interest in the real property. 
Immediately following the incident, Flournoy received a letter stating
the amount of money that Ms. Nolte wanted for the property.  Noltes offer was countered by Flournoy in a
letter stating the amount that [Flournoy] would pay for the property.  The sole reply to this offer was the
institution of suit by Nolte.  

            Given
these facts, the trial court could have found that Noltes suit was brought for
the improper purpose alleged by Flournoy:  securing a higher purchase price for Noltes
interest in the property.  The trial
court also could have found the allegations that Flournoy had converted
personal property lacked evidentiary support, and that the absence of an
allegation that property had been removed from the home, coupled with an
admission that Flournoy had removed the locks on the doors, demonstrated
Noltes knowledge that the allegation of conversion would lack evidentiary
support even after discovery.  Therefore,
we cannot say the trial court abused its discretion in finding that Noltes
suit was frivolous under Chapter 10 of the Texas Civil Practice and Remedies
Code.[3]  This point of error is overruled. 

III.       The Record Supported
Amount of Costs Awarded

            Nolte
complains that there is insufficient evidence to support the trial courts
award of costs in the amount of $661.00. 
She complains that the bill of costs totals only $269.00.  As a general rule, the successful party to a
suit shall recover of his adversary all costs incurred therein.  Tex.
R. Civ. P. 131.  The allocation of
costs is a matter for the trial courts discretion and cannot be overturned on
appeal, absent an abuse of discretion.  Labor v. Warren, 268 S.W.3d 273, 278
(Tex. App.Amarillo 2008, no pet.) (citing
Madison v. Williamson, 241 S.W.3d 145, 157 (Tex. App.Houston [1st Dist.]
2007, pet. denied)). 

            Each
party to a suit shall be responsible for accurately recording all costs and
fees incurred during the course of a lawsuit, if the judgment is to provide for
the adjudication of such costs.  Tex. Civ. Prac. & Rem. Code Ann. §
31.007 (a) (West 2008).  A judge may
award fees of the clerk and service fees due to the county, as well as fees of
the court reporter for the original of stenographic transcripts necessarily
obtained for use in the suit.  Tex. Civ. Prac. & Rem. Code Ann. §
31.007(b)(1), (2).  Section 31.007(a) of
the Texas Civil Practice and Remedies Code prescribes that

Each party to a suit shall be responsible for
accurately recording all costs and fees incurred during the course of a
lawsuit, if the judgment is to provide for the adjudication of such costs.  If the judgment provides that costs are to be
borne by the party by whom such costs were incurred, it shall not be necessary
for any of the parties to present a record of court costs to the court in
connection with the entry of a judgment.

 

Tex.
Civ. Prac. & Rem. Code Ann. § 31.007(a).  Although somewhat vague as to procedure,
Section 31.007(a) clearly does not require a formal presentation of evidence
of a partys costs during trial.  Varner v. Howe, 860 S.W.2d 458, 466
(Tex. App.El Paso 1993, no writ).  All
that seems to be required is that the successful party present . . . an
itemized list of costs and fees incurred during the lawsuit.  Id.;
see Labor, 268 S.W.3d at 279.  The expense of taking depositions is an item
of court costs and properly chargeable as such.  Wallace
v. Briggs, 348 S.W.2d 523, 527 (Tex. 1961); see Crescendo Invs., Inc. v.
Brice, 61 S.W.3d 465, 48081 (Tex. App.San Antonio 2001, pet.
denied).  

            During
trial, Flournoy submitted a bill along with testimony demonstrating that costs
of $661.00 was incurred from Lufkin Court Reporting Service for Noltes
deposition.  Therefore, we cannot say the
trial court abused its discretion in awarding this $661.00 as costs.  This point of error is overruled.  

IV.       Nolte
Failed to Preserve Procedural Complaints Related to Sanctions Award

            A.        Fair Notice of Pleading 

            The
Due Process Clause of the United States Constitution limits a courts power to
sanction.  Greene v. Young, 174 S.W.3d 291, 298 (Tex. App.Houston [1st Dist.]
2005, pet. denied) (citing In re Bennett,
960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding)).  The office of pleadings is to define the
issues at trial, and to give the opposing party information sufficient to
enable him to prepare a defense.  Alan Reuber Chevrolet, Inc., 287 S.W.3d at 884.  Texas follows a fair notice standard for
pleading, in which courts assess the sufficiency of pleadings by determining
whether an opposing party can ascertain from the pleading the nature, basic
issues, and the type of evidence that might be relevant to the controversy.  Id. (quoting
Low, 221 S.W.3d at 612 (citing Horizon/CMS Healthcare Corp. v. Auld,
34 S.W.3d 887, 89697 (Tex. 2000)). 
Generally, before sanctions may be imposed against a party or an
attorney, notice of the procedural basis for the potential sanctions must be
given.  Id. (citing Bradt v. Sebek,
14 S.W.3d 756, 763 (Tex. App.Houston [1st Dist.] 2000, pet. denied); Hawkins v. Estate of Volkmann, 898
S.W.2d 334, 346 (Tex. App.San Antonio 1994, writ denied)).  

            The
suit by Nolte against Flournoy was twofold:  (1) for conversion, and (2) for declaratory
judgment.  She admitted in the petition
that Flournoy had removed the locks from the porch home, but alleged that such
conversion is ongoing in nature.  Here,
Flournoys answer specified that the personal property had not been removed
nor has it been transferred, altered, destroyed or damaged.  Flournoy expanded further, saying that the
Plaintiffs claim is frivolous, without merit and filed for the sole purpose of
intimidation and threat.  The Plaintiff
attempts to use the court system and the cost of legal services to coerce the
Defendant into paying her purchase number for her undivided interest in the
real property.  In this case, sanctions
could have been awarded under Rule 13 of the Texas Rules of Civil Procedure, or
under Chapter 9 or 10 of the Texas Civil Practice and Remedies Code.  Although not followed here, the better
practice would have been to specify the particular means by which Flournoy was
seeking sanctions. 

            However,
an opposing party should use special exceptions to identify defects in a
pleading so that they may be cured, if possible, by amendment.  Auld,
34 S.W.3d at 897.  Absent the filing of
special exceptions, courts should construe the pleadings liberally in favor of
the pleader.  Id. at 897.  Due process
claims, including claims of lack of fair notice of hearing regarding sanctions,
can be waived.  Price v. Schroeder, No. 03-07-00364-CV, 2010 WL 2010792, at *16
(Tex. App.Austin May 20, 2010, no pet.) (mem. op.); see Tex. R. App. P.
33.1; Rittenhouse v. Sabine Valley Ctr.
Found., Inc., 161 S.W.3d 157, 16667
(Tex. App.Texarkana 2005, no pet.).  A
party is required to preserve such claims by a timely and specific
objection.  Low, 221 S.W.3d at 618.  A
complaint that fair notice of the procedural basis under which sanctions were
sought is untimely if no objection is lodged either before or during a
sanctions hearing.  Id.  Because the objection
regarding whether Flournoys motion provided fair notice came in a motion to
vacate, the complaint was untimely.  Id.  Therefore,
we find that Nolte failed to preserve this complaint for appeal. 

            B.        Notice of Hearing 

            Likewise, Nolte waived her
complaints that the notice of a trial setting was insufficient to afford her
proper notice that the trial court would hear Flournoys motion for
sanctions.  First, although Nolte had
notice of the setting, she made a conscious decision not to appear, taking the
position that there was no need to appear when the only remaining claim for
relief was Flournoys motion for sanctions. 
Next, after adverse action was taken against her, Nolte filed a motion
to vacate, or alternatively modify, correct or reform the trial courts
judgment, complaining of the lack of fair notice in the pleading.  However, when the trial court afforded Nolte
the opportunity to participate in a new trial, Nolte declined.  Specifically, the following transpired at the
hearing on the motion to vacate:

            THE
COURT:  . . . . Im also a concerned -- I
guess what my deal is if Mr. Phillips [counsel for Nolte] -- you know, if
you are asking for some type of relief that says, hey, put me back at square
one, let me have the hearing over again, I would tend to say, fine, we will do
it all over again.  But if you are just
trying to vacate the order altogether and not go back to square one where we
have the hearing -- Mr. Flournoys hearing, then Im not going to do that.  So Im just making sure that Im not going
through some legal land mine where if I said, Ill tell you what, I will vacate
the order altogether, that Mr. Flournoy -- and I am referring to the plaintiff,
Mr. Flournoy, does not have his opportunity to present his case, then Im not
going to grant the motion.  . . . So what
do you want to do?

 

            [ATTORNEY
FOR NOLTE]:  I think Mr. Flournoy had an
obligation to pay his filing fee and he didnt do it.  

 

Not only did Nolte not request a
new trial, she specifically declined that potential remedy for her
complaint.  On appeal, Nolte now requests
that this Court reverse and vacate the Trial Courts two final judgments and
render a take nothing judgment for the Appellee, dismissing the award of
sanctions and costs against the Appellant. 
As stated in Low, the proper
method to preserve [a] notice complaint was to bring the lack of adequate notice
to the attention of the trial court at the hearing, object to the hearing going
forward, and/or move for a continuance. 
Id. at 618.  This would have afforded Nolte a reasonable
opportunity to respond.  Id. 
Here, Nolte declined an opportunity to retry the motion for sanctions,
apparently firmly standing solely on the mistaken assumption that the trial
court did not possess the authority to enter the order due to the failure to
pay fees to the clerk for the filing of a counterclaim.  Therefore, she waived any complaints regarding
lack of notice of the hearing. 

            C.        Texas Civil Practice and Remedies Code
Procedural Requirements 

            Nolte
also complains that procedural requirements under Chapter 10 were not followed,
an example of which was the trial courts failure to describe in [the] order
imposing a sanction . . . the conduct the court has determined violated Section
10.001 and explain the basis for the sanction imposed.  Tex.
Civ. Prac. & Rem. Code Ann. § 10.005 (West 2002).  As a prerequisite to presenting a complaint
for appellate review, the record must show that:  (1) the complaint was made to the trial court
by a timely request, objection, or motion . . . .  Tex. R.
App. P. 33.1(a)(1).  Because Nolte
failed to raise these issues specific to Chapter 10 with the trial court in her
motion to vacate the judgment, or otherwise, she did not preserve error with
respect to these claims.  See Olibas v. Gomez, 242 S.W.3d 527, 532
(Tex. App.El Paso 2007, pet. denied); Parker
v. Walton, 233 S.W.3d 535, 541 n.7 (Tex. App.Houston [14th Dist.] 2007, no
pet.);  Spiller v. Spiller, 21 S.W.3d 451, 456 (Tex. App.San Antonio 2000,
no pet.); Schexnider v. Scott & White
Meml Hosp., 953 S.W.2d 439, 441 (Tex. App.Austin 1997, no pet.).

            We
find that Nolte failed to preserve her points of error relating to due process,
fair notice, and procedural requirements under the Texas Civil Practice and
Remedies Code.  They are overruled.  Tex. R.
App. P. 33.1.

V.        CONCLUSION

            We affirm the
trial courts judgment. 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          July
26, 2011

Date Decided:             August
16, 2011

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Govt Code Ann. § 73.001
(Vernon 2005).  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.





[2]Unlike
Rule 13 and Chapter 9 of the Texas Civil Practice and Remedies Code, Section
10.001 does not contain a requirement that the person acted in bad faith.





[3]Flournoy
argues that another reason supports the trial courts judgment.  Here, no findings of fact and conclusions of
law were requested or made.  In such a
circumstance, we may affirm a judgment on any theory of law applicable to the
case and supported by the record.  McDowell v. McDowell, 143 S.W.3d 124,
131 (Tex. App.San Antonio 2004, pet. denied). 
A nonsuit is not an impediment to an award of attorneys fees when declaratory
judgment is sought.  798 S.W.2d at
871.  Nolte invoked the declaratory
judgment act in her pleadings and later filed for nonsuit under Rule 162 of the
Texas Rules of Civil Procedure.  [I]t is
well established that the trial court may award attorneys fees to any party
under the Declaratory Judgment[s] Act.  Brookshire Katy Drainage Dist. v. Lily
Gardens, LLC, 333 S.W.3d 301, 313 (Tex. App.Houston [1st Dist.] 2010,
pet. filed).  A party is also not
required to request attorneys fees with specificity to be eligible for an
award under the Declaratory Judgments Act, so long as a general request for
attorneys fees exists.  Purvis Oil Corp. v. Hillin, 890 S.W.2d
931, 939 (Tex. App.El Paso 1994, no pet.); see also Canales v. Zapatero,
773 S.W.2d 659, 66061 (Tex. App.San Antonio 1989, pet. denied).